# Richmond.

CHEATHAM v. CHEATHAM'S EX'OR.

CHEATHAM'S EX'OR v. CHEATHAM.

JANUARY 28th, 1886.

81  395
89  899
81  395
90  164

1. SPECIFIC PERFORMANCE—*Husband and wife— Wife's lands.*—If husband and wife agree to sell and convey wife's lands, the agreement cannot be specifically enforced in a court of equity—not against wife, because she is incapable of binding herself by an executory contract; not against husband, because coercion against him would be moral coercion against her, and not against the other party, because then the obligation of the contract would not be mutual, and the remedies equal.   *Chilhowie Iron Co.* v. *Gardiner*, 79 Va. 307.

2. FIDUCIARIES—*Administration—Rule, &c.*—Fiduciary cannot be compelled, by summary process of rule, to show cause why he shall not be fined and imprisoned, to pay a decree against him as such, especially where his accounts have not been settled in the suit, and it has not been shown that he has assets in his hands.

Two appeals taken from decrees of circuit court of Lunenburg county, rendered in the same cause, under the style of *Cheatham* v. *Cheatham's Executor and others.*   The decree from which the first appeal was taken was rendered November 18, 1878. The decrees from which the second appeal was taken were rendered June 18, 1881, and November 11, 1881.

Opinion states the case.

*Irvin & McKenny* and *W. W. Henry,* for the appellants.

*H. L. Lee* and *Pegram & Stringfellow,* for the appellees.

LACY, J., delivered the opinion of the court.

The case is as follows: In 1876 Susan F. Cheatham filed her bill in the circuit court of Lunenburg county, alleging that Thomas Cheatham, late of the said county, but now deceased, was her husband; that before her marriage with the said Cheatham she was the widow of John T. Merriman, deceased, under whose will she was possessed of two tracts of land, one situated in Lunenburg county and one in Charlotte county, and considerable personal property; that before her marriage with the said Cheatham a contract was entered into between them, conveying this property to one W. B. Chappell, in trust "for the said Susan F. Merriman and her assigns until the solemnization of the said intended marriage; then upon trust that the said W. B. Chappell, his executor, &c., shall permit the said Thomas Cheatham, during the joint lives of himself and the said Susan F. Merriman, his intended wife, to receive and take all the issues, rents and profits of the same, to and for the joint use and benefit of the said Thomas Cheatham and Susan F., and the child or children of the said Susan F., and the benefit and support of the issue of the said intended marriage, and from and after the death of the said Thomas Cheatham, the whole of the property hereby conveyed shall vest in the said Susan F.; and in the event the said Thomas Cheatham should survive the said Susan F., at her death the same shall vest in her heirs-at-law, or to whomsover she may devise the same by her last will and testament." That the said Thomas Cheatham had died, having first made a will, under which one William A. Wilson had qualified as his executor. That before her marriage, the sum of $980 had accumulated from the profits of her farm, and was in the hands of the said Chappell, which was paid over to Cheatham upon the marriage; that said Cheatham had cut, during the coverture, bark from her

land worth $261.75; that said Cheatham sold one of her tracts of land for $700, and received the money therefor, and afterwards contracted to sell, and did deliver possession of her mansion-house tract for the sum of $3,000, received a part of the purchase money therefor, and took bonds for the deferred payments, which bonds were in the possession of his executor, Wilson; and that the executor of the said Cheatham be required to pay to her these several sums, and deliver to her the uncollected bonds given for the purchase of the said land.

In the month of May of the following year Susan F. Cheatham filed an amended bill, stating that $585 was the price of her Charlotte land, and not $700, as she had stated; that Webb & Stokes were the purchasers of the Lunenburg land, and that E. E. Hundley was the purchaser of the Charlotte land; that as to the Lunenburg land, that she could not now state that any part of the purchase money had been paid; that she was willing to confirm the sale to them upon the bonds being turned over to her, and whatever money had been paid being paid to her by her husband's executor; that the deed she had made to Hundley was only a pretended deed, made by her under her husband's control and authority over her; that the deed could not be enforced against her, and Hundley had no title whatever to the said tract of land, and that she was not willing to make him a deed except upon his paying the money again to her, or upon the payment of the same to her by her husband's executor.

Cheatham's executor answered this bill, stating that the said Susan F. was the administratrix of her first husband, John T. Merriman; that upon her marriage her powers were revoked, and that the said Thomas Cheatham qualified on the Merriman estate; that the Merriman estate was much indebted; that the personal property was appraised at $391.25, and sold by Cheatham at $512; that Cheatham paid $1,660.93 for this estate, as

his settled accounts showed; that the sale to Hundley was made by her, and her husband had no concern with it; that if she wished to set aside the sale to Hundley, Hundley should be made a party to the suit; that as to the sale of the other tract, her husband was only a formal actor, and that the bonds of the purchasers, Webb & Stokes, were not in his possession, but where they had always been, in the hands of Susan F. Cheatham, which she well knew; that the money realized from the sale of the Hundley land was used by Susan F. Cheatham for the education of her daughter by the first marriage, at costly and expensive seminaries, and not used by Thomas Cheatham, who was a man of large means, and had no occasion whatever to use his wife's money.

The matters of account in dispute having been referred to a commissioner, he reported three accounts, numbered respectively one, two and three.

No. 1 was an account of Cheatham as administrator of John T. Merriman, deceased, showing a balance due Cheatham of $276.33; No. 2 was an account of debts claimed by Susan F. Cheatham against the estate of Thomas Cheatham, deceased, showing a total of $1,987.20. In this account was included the sales of the Charlotte land of $585 principal, and $209.33 interest. No. 3 was an account of the outlay made by Thomas Cheatham for the education of M. E. Merriman, the daughter of Merriman, amounting to the sum of $2,243.52.

Webb & Stokes asked to be admitted parties defendant to the bill, and filed their answer declining the purchase made by them, upon the ground that the contract or agreement of purchase made by them was, under the marriage settlement aforesaid, a nullity; that they could not compel compliance on the part of Mrs. Cheatham, and asking that the same be declared a nullity, and the amount paid by them refunded to them.

At the same term a decree was rendered by the court direct- ing that E. E. Hundley be made a party defendant, and sum- moned to answer the bill in the cause; declaring that the agreement of sale to Webb & Stokes was a nullity; directed that Webb & Stokes deliver the real estate bought by them up to Mrs. Cheatham; that an account be taken of the rents and profits of the said land during the time it was in the posses- sion of the said Webb & Stokes, and make enquiry of waste and damages, &c.; that the administrator of Merriman pay to the executor of Cheatham $276.63, the amount found due by account No. 1; and offsetting the amount of account No. 3— $2,243.52—with the amount stated in account No. 2, but stating No. 2 as $1,402.20, being the said sum of $1,987.20, without the $585, the price of the Charlotte land; taking note of the $585 principal, and overlooking the $209.33 interest on the said $585, and disallowed the residue of account No. 3 ; and directing that Cheatham's executor refund to Webb & Stokes the amount paid by them on their purchase, without stating or ascertaining the said amount, which nowhere appears, and directing Susan F. Cheatham to cancel and return the bonds executed by Webb & Stokes to them; and that the cost of the suit be paid equally by the parties plaintiffs and defendants to the suit.

In September following Mrs. Cheatham compromised with Webb & Stokes as to the account ordered to ascertain against them rents and profits, damages, &c., and received of said Webb & Stokes $400 in full payment and satisfaction therefor, and the said Stokes to pay the taxes up to and including 1877.

In November following Susan F. Cheatham filed a bill of review, showing error in the former decree as to the item No. 1 in account No. 2, the same not being profits but part of the *corpus* of the trust estate, as the said item No. 1, of account No. 2, of $480 was what was made from her land before her

marriage with Cheatham. And at the June term, 1879, she filed another bill of review setting forth the same more in detail, and asking that the balance found due from Merriman's estate to Cheatham, of $276.63 in account No. 1, should be offsetted by the said $480 in account No. 2, and seeking to have a review of the whole cause. Upon the coming on of the cause to be heard upon these bills, a decree was rendered wherein the court disallowed item No. 1, of account No. 2, as to $380 thereof, and deducting therefrom the amount of account No. 1 decreed against Cheatham's estate, as to the balance $149.17, with interest to June 1st, 1878, in the former decree. *And the court being of opinion that there is no other error in the decree of June term, 1878, doth adjudge, order and decree that the bill of review filed at the June term, 1879, be and the same is dismissed at the costs of S. F. Cheatham.* And it being suggested that E. E. Hundley was dead, the cause was ordered to be revived as to the executors of the said Hundley, deceased. From this decree Mrs. Cheatham appealed to this court, and the questions therein involved came under review in this court under the first appeal entitled, *Susan F. Cheatham* v. *Thomas Cheatham's Executor.*

At the November term, 1880, of the said court J. B. M. Osborn, one of the executors of E. E. Hundley, filed his answer, setting forth the purchase by his testator of the Charlotte land from Susan F. Cheatham at the price of $585; the payment to her for the same in cash, and produced the check, endorsed by her, for the said sum; the subsequent sale of the said land to J. D. Priddy, who had erected thereon improvements to the amount of nine or ten thousand dollars; that Mrs. Cheatham had stood by and seen these improvements erected and gave no notice of any claim to the land on her part; that if the sale was to be set aside S. F. Cheatham should be decreed to refund the money with interest, and to pay for the improvements.

The circuit court thereupon decreed that the sale was void; and decreed accounts to ascertain the value of the land at the time of the sale; the value now without the improvements, and the value of the improvements, &c. The commissioner reported five accounts: No. 1. As to the improvements, reporting them to be worth $6,000.00. No. 2. Value of the land at the time of the sale to Hundley, placing that at $468. No. 3. Value of land now without improvements, fixing that at $351. No. 4. Rents from day of sale without improvements, at nothing. No. 5. Rents of the land with improvements, fixing that at $570, from 1875 to 1881.

On the 18th of June, 1881, the court rendered a decree in the cause, by which, after sustaining Mrs. Cheatham's exceptions to this report, which had been filed, it was decreed that it appearing that Thomas Cheatham had received the purchase money for this Charlotte land of his wife in his lifetime, and that his estate would be ultimately liable therefor, that Cheatham's executor pay to Mrs. Cheatham $585, with interest from the 1st day of May, 1876, the date of the death of Cheatham, till paid; and that upon the receipt of the money, Susan F. Cheatham should make to such person as Hundley's executor should direct a good and sufficient deed. At the November term following Cheatham's executor, not having paid this debt thus ascertained against his testator's estate, without settling his transactions and ascertaining the balances in his hands, if any, liable to the satisfaction of this debt, whereupon a personal decree might be made against him, made a rule against him arraigning him for contempt; and, holding him in duress by the process of the court, compelled him, under threat of the loss of his personal liberty, to pay this amount, and the $149.17, heretofore decreed against him, which he paid under protest. It does not appear whether this fiduciary was thus compelled to commit a *devastavit,* his accounts as executor

not being settled in this suit. But the executor, holding this to be an unwarrantable way of settling fiduciary accounts, filed a bill of review which was dismissed, and a decree was rendered directing the executor to pay the costs to S. F. Cheatham out of his own estate, and directing execution to issue therefor.

It appears that after the bill of review of Mrs. Cheatham had been dismissed in June, 1879, as stated, and after the cause appeared to have been ended as to Cheatham's executor, and he had been decreed to pay one-half the costs pending the progress of the litigation between S. F. Cheatham and Hundley's executor as to the Charlotte land—the accounts having been fully adjusted between S. F. Cheatham and Cheatham's executor—Hundley gave Mrs. Cheatham, in July, 1880, a notice to take depositions in the county of Charlotte; and Cheatham's executor having neither notice nor knowledge of the taking of any depositions, and not being present, Hundley's executor had himself sworn and proved that Mrs. Cheatham told him that Thomas Cheatham had gotten possession of the $585 for the sale of the Charlotte land, and had put it in bank to his own credit, and that she had thus lost it; and it was by this statement of Mrs. Cheatham, in her own favor, proved at second hand and against her husband's estate, that the judge of circuit court held that it appeared that Thomas Cheatham had, in his lifetime, received this money. From the decrees aforesaid Cheatham's executor appealed to this court; and it is this question which comes here under review in the second appeal of *Cheatham's Executor* v. *Susan F. Cheatham.*

Upon a consideration of the question raised by the first appeal as to the validity of the executory agreement of Mrs. Cheatham, her husband, and her trustee, with Webb & Stokes, we will observe that if the husband and wife agree to sell and convey the wife's lands, the agreement cannot be specifically enforced against either of them; not against the wife, says Mr.

Minor, because she is incapable of binding herself by any executory contract; not against the husband, because coercion employed against him would be the moral coercion of the wife. And since the agreement cannot be enforced against them, it follows that it cannot be enforced by them.

In *Watts* v. *Kinney*, 3 Leigh, 290, Judge Tucker, delivering the opinion of this court, said: "Can there be a contract without mutual obligation? Can there be an agreement between two parties which binds one of them absolutely, and the other only at his pleasure? Yet, here the contract would be binding upon one and not upon the other, if Halloway is to be considered as bound." See also *Chilhowie Iron Co.* v. *Gardiner*, 79 Va. 307, and cases cited.

It cannot be contended that under the *ante-nuptial* settlement in this case that there was any authority in either of the contracting parties to make the agreement to sell made with Webb & Stokes. It was expressly then provided that, at the death of Thomas Cheatham, the whole of the property thereby conveyed should vest in the wife. We think that there was no error in the decree complained of which the appellant can complain, and the said decree must be affirmed.

As to the decrees complained of under the second appeal, we will waive the question raised as to the competency of Mrs. Cheatham to testify in her own interest against her husband's estate, as to the matters occurring during the coverture, it not being *necessary* to decide that question in the view we have taken of the case, there being no exception to the deposition in the court below, although this statement was proved at second hand, the husband's executor being in fact a party to the cause, and the bill of review not being copied in the record. *Beverley* v. *Brooke*, 2 Leigh, 487 (444). But upon an inspection of the record, it appears that the husband's estate has been made in effect to pay this sum of money twice.

In the earlier proceedings, before the first appeal, account No. 1 having been offsetted against account No. 2—No. 1 containing this item against the husband, and No. 2 showing a larger expenditure by him at her instance and request—the decree of June, 1881, appears for that cause to be erroneous; and the dècree of November, 1881, which compelled the executor to pay this debt by summary process for contempt, and under the threat of fine and imprisonment, is erroneous. A fiduciary cannot be thus compelled to make distribution of an estate in his hands, and the decree so directing it must be reversed with costs, and an order entered annulling the decrees of June 18, 1881, and November 11, 1881, and requiring the restitution of the money wrongfully decreed against the appellant, Cheatham's executor, and taken from him under protest afterwards by the summary process of the court. And so much of the said decree as directs Susan F. Cheatham to make to Hundley's executor, or such person as he shall direct, a good and sufficient deed for the Charlotte land, is affirmed—all the exceptions as to the said decrees of June and November, 1881, having been already herein disposed of.

DECREES REVERSED.